******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# 65-99 BURBAN ASSOCIATES, LLC *v.* NEW ANTIOCH CHURCH OF GOD ET AL.
## (AC 48394)

Suarez, Clark and Seeley, Js.

*Syllabus*

The self-represented defendant, G, a pastor at the defendant church, appealed from the trial court's judgment of possession for the plaintiff in its summary process action. G claimed, inter alia, that the court improperly refused to permit him to appear in a self-represented capacity at trial. *Held*:

This court declined to review G's claim that he was denied the right to self-representation at trial, as G failed to properly preserve his claim for appellate review and the claim was inadequately briefed.

This court declined to review G's unpreserved claims that the trial court improperly rendered judgment for the plaintiff for nonpayment of rent with respect to certain leased property, which G claimed was not legally habitable, and when the plaintiff's summary process action was retaliatory in nature, as G raised these claims for the first time on appeal.

This court declined to review G's unpreserved claim that the trial court erred by issuing an order in the summary process action while the court in a separate breach of contract action between the parties had already issued an order of administrative consolidation, as G never requested a stay or continuance of the summary process action pending the resolution of the breach of contract action and, therefore, this claim was neither raised in nor decided by the trial court.

Argued February 2—officially released July 21, 2026

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Haven, Housing Session, where the named defendant filed a counterclaim; thereafter, the court, *Stone, J.*, denied the motion to dismiss filed by the defendant Esau A. Greene, Jr., and granted the plaintiff's motion to strike the counterclaim; subsequently, the case was tried to the court; judgment of possession for the plaintiff, from which the defendant Esau A. Greene, Jr., appealed to this court. *Affirmed*.

*Esau A. Greene, Jr.*, self-represented, the appellant (defendant).

*Robert L. Rispoli*, with whom were *John A. Farnsworth* and, on the brief, *Jeff Mastrianni*, for the appellee (plaintiff).

*Opinion*

SEELEY, J. In this summary process action, the self-represented defendant, Esau A. Greene, Jr.,[1] appeals from the judgment of possession rendered by the trial court in favor of the plaintiff, 65-99 Burban Associates, LLC. On appeal, Greene claims that the court improperly **(1)** refused to permit him to appear in a self-represented capacity during the trial, **(2)** rendered judgment in favor of the plaintiff for nonpayment of rent with respect to leased property that was not legally habitable, **(3)** rendered judgment in favor of the plaintiff in this summary process action, which he alleges was commenced by the plaintiff in retaliation for a breach of contract action brought against the plaintiff by the defendant New Antioch Church of God (church),[2] and **(4)** failed to stay this summary process action until the civil breach of contract action was resolved. We affirm the judgment of the court.

The following facts, which were found by the court or are undisputed in the record, and procedural history are relevant to our resolution of this appeal. "[The plaintiff] own[s] commercial premises located at 65-99 Burban Drive in Branford . . . . The plaintiff entered into a five year lease agreement with [the church and its pastor, Greene] from March 15, 2021, through March 14, 2026,[3]

---

[1]New Antioch Church of God also is a defendant in this case but has filed a separate appeal, which we have addressed in a separate decision, also released today. See *65-99 Burban Associates, LLC* v. *New Antioch Church of God*, 240 Conn. App. 442, A.3d (2026). In this opinion, we refer to New Antioch Church of God and Greene collectively as the defendants and individually by name when necessary.

[2]See *New Antioch Church of God* v. *65-99 Burban Associates, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-23-6136990-S.

[3]Because the lease expired on March 14, 2026, this court, sua sponte, issued an order on April 16, 2026, requiring the parties "to file simultaneous memoranda of no more than 2000 words on or before April 30,

for approximately 14,000 square feet of church space, attached parsonage, a parking lot and the grounds. The defendants agreed to pay $5500 on the first of every month for the first two years of the lease and $7500 on the first of every month beginning on March 1, 2023.

"While the premises were rented in 'as is' condition, article XI of the lease required the plaintiff to ensure that (1) the roof was repaired within fifteen days of the execution of the lease, (2) the windows were repaired within thirty days of the execution of the lease, and (3) the [heating, ventilating, and air conditioning] system was in good working order within thirty days of execution of the lease. Thereafter, the defendant[s] became responsible for maintenance of all building components, repairs to the structure of the building, including mechanicals, and 'all repairs, maintenance and replacements to the interior and exterior of the demised premises and the fixtures and equipment therein and appurtenances thereto . . . .'

"The windows that had been broken due to the premises being vacant were repaired within the allotted time period. Although the roof repairs were not completed within fifteen days, the plaintiff did have a company make the repairs and the defendant[s] did not incur any costs for them. The plaintiff also had a heating and cooling company make repairs at the beginning of the defendants' tenancy and has, [at] various points, provided a credit to the defendants for maintenance work that [the defendants had] paid for, including $26,690 in March 2022 to replace the furnace, $1500 for the air

2026, addressing whether the defendants are still in possession of the property and, if not, whether the appeal has become moot as a result of the defendants vacating the property and the expiration of the lease. See *Bridgeport* v. *Grace Building, LLC*, 181 Conn. App. 280, 293–98, 186 A.3d 754 (2018)." (Footnote omitted.) In response, the parties indicated to this court that the defendants remain in possession of the premises, as they continue to operate a crisis center for vulnerable women in one of the buildings on the premises, even though the church building is under abatement by order of the fire marshal of the town of Branford and has been vacated. We conclude, therefore, that the appeal is not moot. See id., 295 (summary process appeal becomes moot when, at time of appeal, appellant no longer is in possession of premises).

conditioners in June 2022, and $2400 for service of the rooftop units in December 2022.

"After the initial payment for the security deposit [and] prorated [rental payments made in] March . . . and April 2021 . . . the defendants either did not make their monthly payments, paid late, or paid less than the rental amount. At the end of 2021, the defendants owed $24,940 in rent and late fees. At the end of 2022, the defendants owed $16,550. Despite the lease providing for a rent increase on March 1, 2023, the plaintiff did not begin charging $7500 until September 1, 2023. After one partial payment in September, the defendants stopped making any payments for rent. From September 2023 until October 2024, the defendants accrued $109,300 . . . in unpaid rent, use and occupancy, and late fees.

"In October 2021, [Greene] emailed Michael Massimino, an agent of the plaintiff, seeking to begin discussions to purchase the premises. In July 2022, Massimino made an offer to the defendants [whereby] the plaintiff would sell the church and four acres of land for $1.8 million dollars, $[1.5] million dollars[4] would be due at closing, and $300,000 would be financed by a mortgage held by the plaintiff. The parties would negotiate credits as reimbursement for work that the defendant[s] had done. After the defendants had undertaken steps to obtain financing, Massimino told Greene that [the plaintiff] no longer wanted to sell the property." (Footnote added.)

The plaintiff filed a notice to quit possession of the premises for nonpayment of rent, which was served on the defendants on May 28, 2024. The defendants did not vacate the premises by the June 4, 2024 date set in the notice, and the plaintiff thereafter commenced this summary process action[5] for nonpayment of rent.

---

[4] We note that the court's memorandum of decision includes a scrivener's error in that it states that $1.3 million would be due at closing. The transcript from the trial shows that the correct number is $1.5 million to be paid at the time of closing.

[5] "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to

In an amended complaint,[6] the plaintiff alleged that it had entered into a written lease agreement with the defendants, who took possession of the premises but failed to pay monthly rent, and that it had served on the defendants a notice to quit possession of the premises on or before June 4, 2024, but that, despite that notice, the defendants continued to remain in possession of the premises. At the outset of the action, Greene filed an appearance as a self-represented party, and the church was represented by Attorney Jerald Scott Barber. On July 17, 2024, Greene filed a motion to dismiss the action. On August 20, 2024, on behalf of the church, Attorney Barber filed an answer and ten special defenses[7] and sought a "right of recoupment," which sought money damages and which the court and the parties treated as a counterclaim.[8] Thereafter, the plaintiff filed a motion to strike the counterclaim.

A trial in this matter was held on October 10, 2024. At the commencement of the proceeding, the court asked

which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms." (Internal quotation marks omitted.) *TOV Realty, LLC* v. *Suarez*, 354 Conn. 745, 752,    A.3d    (2026). "Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *Seramonte CT, LLC* v. *Blau*, 236 Conn. App. 861, 864 n.3, 349 A.3d 1096 (2025), cert. denied, 354 Conn. 918, 351 A.3d 411 (2026).

[6]The trial court file shows that the amended complaint was served on the church and Greene on July 16, 2024.

[7]The ten special defenses alleged that the plaintiff's action was barred (1) due to the plaintiff's failure to perform its obligations under the lease, (2) due to the plaintiff's breach of the lease, (3) by the doctrines of equitable and/or promissory estoppel, (4) by virtue of the doctrine of waiver, (5) by the doctrine of laches, (6) by virtue of the plaintiff's unclean hands, (7) by the plaintiff's contributory and/or comparative negligence, (8) by the plaintiff's failure to mitigate its damages, (9) by the plaintiff's fraudulent, negligent or innocent misrepresentations "as to the terms of the subject transactions," which induced the church to enter into those transactions and on which the church reasonably relied to its detriment, and (10) by virtue of accord and satisfaction.

[8]We note that the trial court file in this case does not include an answer or any special defenses filed by Greene when he appeared in the case in a self-represented capacity. In its memorandum of decision, however,

Greene: "Do you know if your attorney is in mediation right now?" Greene replied: "Yes, he is with another client." The court initially stated to Greene that it would pass on the matter "until your attorney comes out of mediation," and Greene responded, "[o]h, okay." Thereafter, a judicial marshal informed the court that Attorney Barber was in the hallway and would be in the courtroom momentarily. When Attorney Barber entered the courtroom, the court asked if he needed more time to finish his mediation, and Attorney Barber replied that he could take up the summary process matter at that time and return to his mediation afterward. He also stated to the court that he had filed an appearance on behalf of both the church and Greene.[9]

The court then addressed the motion to dismiss and the motion to strike the counterclaim. The court denied the motion to dismiss and, following brief arguments from counsel regarding the motion to strike, granted the motion to strike. After those issues were resolved, the court asked if the parties were ready for trial, to which Attorney Barber responded that he was not prepared for trial because he had to subpoena witnesses. A colloquy between the court and Attorney Barber ensued, during which Attorney Barber stated: "Well, Your Honor, I filed my appearance on behalf of [Greene] this morning. I was on—previously I was on the file for the church only. The church is only—the church's interests are distinct and different than [Greene's] interest in this case." After Attorney Barber acknowledged that he had filed an appearance on behalf of the church two months prior, the court responded: "So, you've been aware that this action is pending for two months, and you're not ready for trial today?" Attorney Barber then stated that he was ready for trial, and the trial proceeded. At no point during that colloquy or the discussions that took place did Greene interject and indicate to the court that he wanted

the court treated the special defenses filed by the church alone as having been raised by "the defendants."

[9]The record shows that Attorney Barber filed an appearance on behalf of Greene on October 10, 2024, the day of the trial.

to represent himself during the trial. Subsequently, the court heard testimony from Lisa Amato, the plaintiff's property manager, and Greene and admitted various exhibits into evidence.

On December 30, 2024, the court rendered judgment of possession in favor of the plaintiff. In its memorandum of decision, the court found that the plaintiff had proven by a fair preponderance of the evidence that there had been a nonpayment of rent in violation of the terms of the lease. With respect to the special defenses, the court stated: "'[E]quitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding.' *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 777, 627 A.2d 386 (1993). As a preliminary matter, the court notes that the special defenses did not provide any factual allegations to determine whether the special defenses were equitable and, thus, implicated the right to possession. Nevertheless, the court treated all of the special defenses as equitable in nature. As the defendants did not produce any evidence that this action is barred by waiver, laches, contributory and/or comparative negligence, failure to mitigate damages, or accord and satisfaction, those special defenses fail." Further, the court rejected the two special defenses for breach of contract and concluded that the defendants did not produce any evidence that the plaintiff should be estopped from pursuing this summary process action for purposes of their special defense of equitable and/or promissory estoppel.[10] The court also determined that the defendants did not establish their special defense of

---

[10]In reaching this conclusion, the court stated: "Even though the plaintiff did not timely complete all the required repairs, the defendants were not prejudiced, as they received a credit for the repairs that should have been made by the [plaintiff]. The defendants have been in possession of the premises for nearly four years without paying rent for much of that time. The plaintiff continues to make maintenance repairs itself and [to] credit the defendants for maintenance work that the [defendants] [undertook] despite the lease agreement requiring the defendants to be responsible for that work."

unclean hands. Greene, thereafter, filed this appeal in a self-represented capacity.[11]

On appeal, Greene claims that the court improperly (1) refused to permit him to appear in a self-represented capacity during the trial, (2) rendered judgment in favor of the plaintiff for nonpayment of rent with respect to leased property that was not legally habitable, (3) rendered judgment in favor of the plaintiff in this summary process action, which he alleges was commenced by the plaintiff in retaliation for a breach of contract action brought against the plaintiff by the church, and (4) failed to stay this summary process action until the civil breach of contract action was resolved. Having thoroughly reviewed the record and Greene's brief, we conclude that we cannot review the claims raised on appeal because they either were not properly preserved for appellate review or were inadequately briefed. See *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022).

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Cokic* v. *Fiore Powersports, LLC*, 237 Conn. App. 558, 560–61, 351 A.3d 434 (2026); see also *State* v. *Sidiropoulos*, 237 Conn. App. 262, 341 n.44, 351 A.3d 871 ("[c]laims are . . . inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant

[11]As we have indicated, the church has filed a separate appeal from the judgment of possession rendered in favor of the plaintiff.

authority and minimal or no citations from the record" (internal quotation marks omitted)), cert. denied, 354 Conn. 923, 353 A.3d 842 (2026).

Moreover, "[i]t is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked . . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Karaoke Heroes NH, LLC* v. *RVRM Enterprises, LLC*, 237 Conn. App. 762, 777 n.18, 354 A.3d 250 (2026); see also Practice Book § 60-5 (appellate court is generally not bound to consider claim not distinctly raised at trial or arising subsequent to trial); *Dept. of Public Health* v. *Estrada*, 211 Conn. App. 223, 239 n.10, 271 A.3d 1042 (2022) ("[w]e have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial *and was ruled upon and decided by* the court adversely to the appellant's claim" (emphasis added; internal quotation marks omitted)), aff'd, 349 Conn. 223, 315 A.3d 1081 (2024).

With respect to Greene's first claim that he was denied the right to self-representation, we first point out that Greene did not properly preserve his claim for appellate review. Our thorough review of the October 10, 2024 transcript shows that Greene never indicated to the court during the proceeding that he wanted to represent himself. In fact, when the court directly asked Greene about the whereabouts of his counsel, Greene never stated to the court that Attorney Barber was not representing him at the proceeding or that he had changed his mind and wanted to represent himself. Moreover, even when

Attorney Barber stated to the court that he was representing both the church and Greene and had filed an appearance that day on behalf of Greene, which was in addition to the appearance already filed on behalf of the church, Greene never alerted the court that he wanted to represent himself.

We also conclude that Greene did not adequately brief this claim. In his appellate brief,[12] Greene cites to the fourteenth amendment to the federal constitution and article first, § 10, of the state constitution and asserts that "[p]eople have a state and federal constitutional right to appear in court and be heard on matters affecting them . . . ." He also refers to Practice Book § 3-8 (a), which governs the filing of an appearance for a represented party, and contends that "[f]iling an appearance is the way the person alerts the court as well as the other parties that he is representing himself." Then, after making a number of factual assertions about the record in this case, he maintains, in a conclusory fashion, that he was denied the right to represent himself. Aside from those few general references to the state and federal constitutions, and the rule of practice, Greene provided no other legal authority or analysis in support of his claim that he "was denied the right to represent himself . . . ."

"We are mindful that [i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *D. K.* v. *D. F.*, 235 Conn. App. 59, 77, 344 A.3d 564 (2025). This court previously has declined to review an inadequately briefed claim of a self-represented party under similar circumstances. See, e.*g.*, id., 78 ("In his appellate brief, the [self-represented] defendant merely

[12]Greene did not file an appellate reply brief.

recite[d] the language of [General Statutes] § 46b-56 (g) and assert[ed], in a single conclusory statement, that the court failed to apply that statutory provision. He [did] not provide any legal authority, facts, or analysis to support his claim that the court failed to apply § 46b-56 (g) or how such failure rendered improper the court's denial of his motion for modification."); *Speer* v. *Brown Jacobson P.C.*, 233 Conn. App. 833, 838–39, 342 A.3d 1118 (2025) (even though self-represented plaintiff aptly set forth in her brief principles of law governing appellate consideration of legal claim raised on appeal, she failed to provide any analysis applying those principles to facts of case, and, thus, court declined to review claim as inadequately briefed); see also *Stanley* v. *Commissioner of Correction*, 233 Conn. App. 759, 761, 340 A.3d 538 ("The plaintiff's status as a self-represented litigant does not permit us to overlook the fatal deficiencies in his briefs. 'Although we recognize and adhere to the well-founded policy to accord leeway to self-represented parties in the appeal process, our deference is not unlimited; nor is a litigant on appeal relieved of the obligation to sufficiently articulate a claim so that it is recognizable to a reviewing court.' *Deutsche Bank National Trust Co.* v. *Pollard*, 182 Conn. App. 483, 487, 189 A.3d 1232 (2018)."), cert. denied, 353 Conn. 920, 345 A.3d 809 (2025).

In the present case, although the portion of Greene's brief addressing this issue spans several pages, it is devoid of any citation to relevant legal authority governing his claimed right to self-representation in this proceeding or substantive legal analysis. See *Moore* v. *Bryant-Mitchell*, 234 Conn. App. 378, 394–97, 344 A.3d 222 (2025) (declining to review claim raised on appeal when appellate briefing on issue was "completely devoid of any citation to legal authority or substantive legal analysis" and "completely bereft of any legal analysis discussing similar precedent or applying pertinent legal principles to the facts of [the] case"). It was incumbent on Greene "to provide a meaningful analysis of his claim . . . and to include citations to relevant legal authority *and* an application of that law to the facts in the present

case. . . . Stated differently, [i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do . . . [the] work, create the ossature for the argument, and put flesh on its bones." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Matusz* v. *Wellmore Behavioral Health, Inc.*, 234 Conn. App. 581, 593–94, 344 A.3d 208, cert. denied, 353 Conn. 926, 345 A.3d 811 (2025).

Accordingly, we consider Greene's first claim to be inadequately briefed and, thus, decline to review it.

With respect to Greene's second and third claims—that the court improperly rendered judgment in favor of the plaintiff for nonpayment of rent with respect to leased property that was not legally habitable and when this summary process action was retaliatory in nature—we conclude that Greene has raised these claims for the first time on appeal and, thus, did not properly preserve them for appellate review.

On the issue of uninhabitability, Greene makes a number of assertions in his appellate brief about the state of disrepair of the property and references documents that he had submitted in support of his motion to dismiss demonstrating that the plaintiff "was subject to an abatement action [concerning the subject] property, which settled with an agreement indicating that the [plaintiff] would leave the property vacant until proper repairs were made." Thereafter, he states: "One can infer then that the property was uninhabitable and unsafe." Greene further contends that he asserted a claim regarding the uninhabitability of the property in his answer and special defenses.[13] With respect to his retaliation claim, Greene maintains that he "asserted [an] affirmative defense of retaliation." He also relies on the retaliatory eviction statute, General Statutes § 47a-20, which precludes a landlord from maintaining an action against a tenant to recover possession of a dwelling unit within

---

[13]The answer and special defenses that Greene attached to his appellate brief is the one filed by the church on August 20, 2024. See footnote 7 of this opinion.

six months after a tenant does certain acts, including, inter alia, reporting housing code violations to appropriate authorities.

Our examination of the record in this case leads us to conclude that Greene's claims of uninhabitability and retaliation were not raised before the trial court. Contrary to Greene's assertion, he never asserted an affirmative defense of retaliation, and the special defenses filed by the church, even if attributable to Greene, do not include allegations of uninhabitability or retaliation under §47a-20. See footnotes 7 and 8 of this opinion. Additionally, although Greene testified at the trial that the repairs the plaintiff was required to perform were not completed in a timely manner, that the roof of the building leaked, and that there was no air conditioning, the focus of his testimony was on the plaintiff's failure to complete the required repairs under the lease, not the uninhabitability of the premises.[14]

"As we previously have noted, we will not review a claim unless it was distinctly raised at trial." (Internal quotation marks omitted.) *Eubanks* v. *Commissioner of Correction*, 329 Conn. 584, 597, 188 A.3d 702 (2018). Also, this court has recognized that, "[b]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Cohen & Wolf, P.C.* v. *Netter*, 236 Conn. App. 693, 700, 350 A.3d 609 (2025), cert. denied, 354 Conn. 919, 353 A.3d 840 (2026). Accordingly, because Greene did not raise his claims of uninhabitability and retaliation with the trial court, which, thus, did not decide the claims, we decline to review them. See *McLaughlin* v.

[14]When asked about his discussion with the landlord about the property, Greene testified that, "from the onset of looking at the property, I was told that the property had been vacant. And, as we toured the . . . rectory, the home, I was told by [Massimino] that we should not worry because the insurance [was] going to take care of all of the repairs that needed to be done. And, also, there [were] questions if the house or building was habitable, and I was told yes, they were."

*McLaughlin*, 237 Conn. App. 429, 439, 351 A.3d 956, cert. denied, 354 Conn. 927, 353 A.3d 848 (2026).

Finally, we also decline to review Greene's last claim— that the "court erred by issuing an order in the housing session while the civil court had already issued an order of administrative consolidation." In asserting this claim, Greene argues that "the housing court should have issued a stay in this [summary process] action until the [breach of contract] matter in civil court was resolved." Specifically, in his appellate brief, Greene contends that, during the trial in this case, "counsel for the tenant requested to be heard on his motion for consolidation; however, [the court] refused. Subsequently, the civil court granted the requested consolidation. Although the civil court consolidation was granted after the eviction proceedings, it was ordered before the [judgment in this case was rendered]. Therefore, the housing session [court] should have entered a stay of [the] proceedings until matters in the civil court were resolved."

The record in this case demonstrates that the defendants never requested a stay or continuation of the summary process action pending the resolution of the breach of contract action. As we previously indicated in this opinion, prior to the commencement of the trial of the summary process action, the court briefly addressed a motion to strike filed by the plaintiff, which asserted that the defendants' counterclaim for money damages could not properly be raised in a summary process action. Attorney Barber argued in response to the motion to strike "that the matter more properly should just be transferred to the earlier [breach of contract] action, which [was] pending . . . ." The court, which treated Attorney Barber's statement as a motion to transfer or consolidate, granted the motion to strike, stating: "I'm going to grant the motion to strike, and the reason is because summary process actions are about possession, not money damages. . . . With respect to the motion to transfer or consolidate, I did review [the] docket, and it appears that the relief that you're seeking in that other

case is separate and distinct from the relief that would be sought in this case, and I . . . don't think it would be appropriate to consolidate these matters . . . or [to] transfer the case at this time." At no point during the proceedings did the defendants request a stay or continuance of the summary process proceeding, and the trial court file does not contain any such filing. Therefore, this claim was neither raised in nor decided by the trial court and is being raised for the first time on appeal. For the reasons previously discussed, we decline to review this claim.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15] Even if we were to review this claim, we find no merit to Greene's contention that the trial court in this case "failed or refused to acknowledge the fact that the civil court had consolidated the matters in November of 2024, prior to the housing court issuing an order." As Greene acknowledges, the consolidation order in the breach of contract action was issued after the completion of the trial in this case, and Greene has not directed this court to anything in the record demonstrating that the trial court in this case was made aware of a consolidation order issued in the separate breach of contract action. Moreover, the court in the breach of contract action consolidated the matters "for administrative purposes only," the effect of which is unclear.